HEATHER DAVIS, SBN 239372
heather@protectionlawgroup.com
BRENDAN J. BURTON, SBN 323495
brendan@protectionlawgroup.com
SHADI SAHEBGHALAM, SBN 343403
shadi@protectionlawgroup.com
**PROTECTION LAW GROUP, LLP**
149 Sheldon Street
El Segundo, California 90245
Tel.: (424) 290-3095 / Fax: (866) 264-7880

*Attorneys for* Plaintiff
MIREYA MARTINEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIREYA MARTINEZ, individually and on behalf of other similarly situated, and as an aggrieved employee and Private Attorney General,<br><br>Plaintiffs,<br><br>vs.<br><br>CENCORA, INC., a Delaware corporation; AMERISOURCEBERGEN DRUG CORPORATION, a Delaware corporation; AMERISOURCEBERGEN SERVICES CORPORATION, a Delaware corporation; AMERISOURCE SPECIALTY GROUP, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 5:24-cv-02663-MRA-SHK<br><br>*Assigned for All Purposes to: the Hon. Mónica Ramírez Almadani, Courtroom 10B*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPORT THEREOF**<br><br>[On Removal from the Superior Court of the State of California for the County of San Bernardino, Case No. CIVRS2401305]<br><br>Hearing Date: March 17, 2025<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10B<br><br>Complaint Filed: October 7, 2024<br>FAC Filed: November 22, 2024<br>Removal Date: December 18, 2024<br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 17, 2025, at 1:30 p.m. in Courtroom 10B of the above-captioned Court, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, California, 90012, MIREYA MARTINEZ ("Plaintiff") will and hereby does move the Court for an order remanding the instant action to the Superior Court of California, County of San Bernardino.

Plaintiff moves for remand pursuant 28 U.S.C. § 1447(c) and on the grounds that this Court does not have removal jurisdiction over this case. Defendants CENCORA, INC., AMERISOURCEBERGEN DRUG CORPORATION, AMERISOURCEBERGEN SERVICES CORPORATION, and AMERISOURCE SPECIALTY GROUP, LLC (collectively "Defendants") improperly removed this Action from state court pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d) ("CAFA"). This Court lacks jurisdiction under CAFA because Defendants have failed to prove by a preponderance of the evidence that the total amount in controversy exceeds the sum of $5,000,000.00. Plaintiff therefore requests that this case be remanded to the Superior Court for the County of San Bernardino, where it was originally filed and rightfully belongs.

/ / /

/ / /

/ / /

Plaintiff's motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Heather Davis, Esq., the Court's files and records in this Action, any documents Plaintiff may subsequently file, and any oral argument or other matter that may be considered by the Court.

DATED: January 21, 2025 **PROTECTION LAW GROUP, LLP**

By: /s/ Heather Davis
Heather Davis
Brendan J. Burton
Shadi Sahebghalam
*Attorneys for* Plaintiff
MIREYA MARTINEZ

## Table of Contents

**I. DEFENDANTS' WHOLLY UNSUPPORTED REMOVAL IS FATALLY FLAWED BECAUSE DEFENDANTS FAIL TO PROVE THE AMOUNT IN CONTROVERSY BY A PREPONDERANCE OF EVIDENCE.** ............1

**II. BACKGROUND AND SUMMARY OF CASE.** ............3

**III. PLAINTIFF'S MEET AND CONFER EFFORTS.** ............4

**IV. LEGAL STANDARD.** ............4

**A. Ninth Circuit Precedent For Establishing CAFA Jurisdiction** ............5

**IV. ARGUMENT.** ............7

**A. Defendants' Notice of Removal Is Not Supported By Evidence.** ............7

**B. This Court Lacks Subject Matter Jurisdiction Because Defendants Failed To Meet Their Heavy Burden Of Establishing The Requisite Amount in Controversy.** ............7

**i. Defendants' Calculations for Unpaid Meal and Rest Period Premiums Are Baseless.** ............9

**ii. Defendants' Calculations for Unpaid Minimum Wages, Waiting Time Penalties for Discharged Putative Class Members, and Wage Statement Violations Are Problematic.** ............13

**iii. Defendants' Inclusion of the Amount in Controversy for Attorneys' Fees Is Improper.** ............16

**V. CONCLUSION.** ............18

# Table of Authorities

## Cases


*Armstrong v. Ruan Transp. Corp.*, 2016 WL 6267931 (C.D. Cal. Oct. 25, 2016) ................ 11, 12

*Buchner v. FDIC*, 981 F. 2d 816, 820 (5th Cir. 1993) ........................................................ 8

*Cackin v. Ingersoll-Rand Indus. U.S., Inc.*, 2021 WL 2222217, at *3 (C.D. Cal., June 2, 2021) 15

*Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ................................ 7

*Frias-Estrada v. Trek Retail Corp.*, 534 F.Supp.3d 1058 (N.D. Cal. 2021).......................... 13, 14

*Fritsch v. Swift Transp. Co.*, 899 F.3d 785 (9th Cir. 2018) ............................................ 20, 21

*Galt G/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998) ............................................... 21

*Garibay v. Archstone Communities LLC*, 539 Fed. Appx. 763 (9th Cir. 2013) ........................ 17

*Jolene Peters v. TA Operating LLC, et al.*, 2023 WL 1070350, Case No. 22-CV-01831-JGB-SHKx (C.D. Cal., Jan. 26, 2023), at *7.................................................................. 14, 15

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001)................................................. 5

*Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *7 (S.D. Cal. Nov. 26, 2012)............ 18

*Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007) .................................. 17, 18

*Mook v. Regis Corp.*, 2009 WL 10672049, at *4 (S.D. Cal. February 18, 2009)....................... 19

*Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009) ...................................... 5

*Pac. Mar. Ass'n v. Mead*, 246 F. Supp. 2d 1087 (N.D. Cal. 2003) ............................................. 6

*Ray v. Nordstrom, Inc.*, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9, 2011).............................. 12

*Ruby v. State Farm Gen. Ins. Co.*, 2010 WL 3069333, at *4-5 (N.D. Cal. Aug. 4, 2010) .......... 12

*Salazar v. Johnson & Johnson Consumer, Inc.*, 2018 WL 4560683, at *3 (C.D. Ca. Sept. 19, 2018) ................................................................................................................................ 15

*Sanchez v. Monumental Life. Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).................................. 7

*Smith v. Diamond Resorts Mgmt.*, 2016 WL 356020, at *3 (C.D. Cal. Jan. 29, 2016) ................ 12

*Sneddon v. Hotwire, Inc.,* Case No. C 05-0951 SI, 2005 Dist. LEXIS 13257, at *5 (N.D. Cal. June 29, 2005)......................................................................................................................... 6

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) ......................................................... 5

*Vanegas v. DHL Express (USA), Inc.*, 2021 WL 1139743, at *4 (C.D. Cal., Mar. 24, 2021) 15, 16
*Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 WL 5274283, at *3 (E.D. Cal. Sep. 16, 2013) ........ 12

**Statutes**

28 U.S.C. § 1446(b) ........ 10
28 U.S.C. § 1447(c) ........ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. DEFENDANTS' WHOLLY UNSUPPORTED REMOVAL IS FATALLY FLAWED BECAUSE DEFENDANTS FAIL TO PROVE THE AMOUNT IN CONTROVERSY BY A PREPONDERANCE OF EVIDENCE.

Plaintiff MIREYA MARTINEZ ("Plaintiff") moves to remand this putative wage and hour class action ("Action") to the San Bernardino Superior Court where it was filed because Defendants CENCORA, INC.'s, AMERISOURCEBERGEN DRUG CORPORATION's, AMERISOURCEBERGEN SERVICES CORPORATION's, and AMERISOURCE SPECIALTY GROUP, LLC's (collectively "Defendants") Notice of Removal relies on improper assumptions stacked upon conclusions made without any of the evidentiary support required to establish the necessary amount in controversy under the Class Action Fairness Act of 2005 ("CAFA").

Defendants' utter lack of evidentiary support behind their sweeping, categorical statements, cannot serve as a basis to presume more than $12 million in damages. In their Removal notice, Defendants present the approximate number of putative class members, the approximate number of terminated putative class members, and the approximate average rate of pay. Notably, however, Defendants' Notice is devoid of foundational facts or any adequate evidence needed to support the reasonableness of their calculations, such as the number of putative class members who worked sufficient hours per shift to incur a meal period premium or rest period premiums or even how the average rate of pay was calculated. Defendants, as the employers, have access to the employment records for the putative class, but for the sake of maximizing the amount in controversy, improperly

assume that *every* putative class member suffered a meal period violation *every single week* they worked for Defendants. Defendants take the same unsupported liberties with their calculations of rest period violations, wage statement claims, and waiting time penalties. Indeed, Defendants' own notice admits to using a 40% violation rate. *See* Dkt. No. 1, at ¶¶34, 37-38, 42, 45-46, 50, 54-55, and 57. As a result, all of Defendants' amount in controversy calculations are entirely speculative, inflated, and self-serving. Indeed, even with the inclusion of attorneys' fees, Defendants would be unable to clear the $5,000,000.00 jurisdictional threshold.

The Ninth Circuit Court of Appeals has made clear that, where removal is disputed, a removing party must support all assertions about the amount in controversy with summary-judgment-type evidence. Nevertheless, Defendants propose violation rates based entirely upon self-serving assumptions that lack any evidentiary support whatsoever and are tantamount to impermissible speculation. Defendants, as the employer, have access to data that can be used to calculate actual violation rates for Plaintiffs and the putative class members. Rather than provide this data, Defendants rely on conjecture and ask the Court to accept their assumptions as sufficient to confer federal jurisdiction. However, it is precisely this type of conjecture that the Ninth Circuit has held to be insufficient to establish the amount in controversy.

Accordingly, Defendants have failed to meet their burden of showing that CAFA's jurisdictional threshold is satisfied. Plaintiff therefore, respectfully requests that the Court Remand this case to the San Bernardino Superior Court.

## II. BACKGROUND AND SUMMARY OF CASE.

This is a putative wage and hour class action brought by Plaintiffs against Defendants. On October 7, 2024, Plaintiff filed her Complaint against Defendants in the San Bernardino County Superior Court, Case No. CIVRS240135, alleging the following nine causes of action: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201, 202, and 203 (final wages not timely paid); (6) violation of California Labor Code §§ 204 and 210 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (failure to provide accurate wage statements); and (8) violation of California Business And Professions Code § 17200, *et seq*. *See* Declaration of Heather Davis, Esq. in support of Plaintiffs' Motion to Remand filed concurrently herewith ("Davis Decl."), ¶ 2.)

On November 22, 2024, Plaintiff filed her First Amended Complaint ("FAC") adding one (1) cause of action under PAGA. Davis Decl., ¶ 3; *see also* Dkt. 1, Ex. D.

On December 3, 2024, Defendants' counsel Andrew P. Frederick executed and returned Notice(s) and Acknowledgements of Receipt ("NAR") for all four Defendants. On December 11, 2024, Plaintiff filed the NARs. Davis Decl., ¶ 4.

On December 13, 2024, Defendants filed their Answer to Plaintiff's FAC. Davis Decl., ¶ 5; *see also* Dkt. No. 1, Ex. F.

On December 18, 2024, Defendants filed their Notice of Removal to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Davis Decl., ¶6.

## III. PLAINTIFF'S MEET AND CONFER EFFORTS.

Prior to the filing of this Motion, on January 7, 2025, Plaintiff's counsel met and conferred with Defendants' counsel regarding Plaintiff's intent to file this Motion to Remand. See Declaration of Brendan Burton in Support of Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447 ("Burton Decl.") ¶2; Davis Decl., ¶7. Defendants did not agree to withdraw their Notice of Removal. Burton Decl. ¶3; Davis Decl., ¶8.

Because Defendants would not withdraw their Notice of Removal, on January 21, 2025, Plaintiff filed this Motion to Remand based upon removal procedural defects, including reliance on improper assumptions stacked upon conclusions made without any of the evidentiary support required to establish the necessary amount in controversy under the Class Action Fairness Act of 2005, coupled with the fact that the Removal Notice lacks foundational facts or any evidence needed to support the reasonableness of their calculations, such as the number of putative class members who worked enough hours per shift to incur a meal period premium or rest period premium. Davis Decl. ¶9.

## IV. LEGAL STANDARD.

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).) On a motion for remand, the party who invoked the federal court's removal jurisdiction *always* bears the burden of establishing that removal is proper. *Gaus v. Miles, Inc.*,

980 F.2d 564, 566 (9th Cir. 1992); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-858 (9th Cir. 2001)). Removal is generally disfavored and, "[w]here doubt regarding the right to removal exists, a case should be remanded to state court." (*Valdez v. Allstate Ins. Co*., 372 F.3d 1115, 1118 (9th Cir. 2004) (internal quotations omitted)). Therefore, courts "**strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance**." *Gaus,* 980 F.2d at 566 (internal citations omitted); *Pac. Mar. Ass'n v. Mead*, 246 F. Supp. 2d 1087, 1089 (N.D. Cal. 2003).

However, <u>the strong presumption against removal jurisdiction equally applies to removal under CAFA</u>. *See Sneddon v. Hotwire, Inc.,* Case No. C 05-0951 SI, 2005 Dist. LEXIS 13257, at *5 (N.D. Cal. June 29, 2005). As a result, the Ninth Circuit has held that "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction. *Abrego Abrego v. The Down Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

**A. Ninth Circuit Precedent For Establishing CAFA Jurisdiction**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." *See Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 1197

(quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.*

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *See Sanchez v. Monumental Life. Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." *Ibarra*, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event,

a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

## IV. ARGUMENT.

### A. Defendants' Notice of Removal Is Not Supported By Evidence.

Remand may be ordered either for lack of subject matter jurisdiction or for "any defect in removal procedure." (28 U.S.C. § 1447(c); *Buchner v. FDIC*, 981 F. 2d 816, 820 (5th Cir. 1993).) This case presents California-based claims for a specific and limited group of California based employees. Thus, the general presumption against removal applies.

### B. This Court Lacks Subject Matter Jurisdiction Because Defendants Failed To Meet Their Heavy Burden Of Establishing The Requisite Amount in Controversy.

CAFA jurisdiction does not exist because Defendants fail to provide any evidence whatsoever, much less any competent evidence, that the amount in controversy exceeds $5 million. The only support Defendants provide for their calculations are unsupported assumptions as to violation rates and class composition within their Notice of Removal. *See generally*, Dkt. No. 1. Indeed, Defendants fail to provide a single speck of evidence in support of the assumptions underlying their calculations, much less the kind of detailed declaration describing the analysis of time, payroll and personnel records courts have routinely held are necessary to support calculations regarding the amount in controversy. Defendants conveniently fail to provide a single timecard, paystub, wage statement, work schedule, or other

document to support the propriety of their meal and rest break violation rates. Thus, Defendants appear to have pulled all of their underlying figures out of thin air.

Indeed, Defendants do not even provide information about the number of putative class members who were full-time versus part-time, but summarily state an approximate number of shifts worked by the putative class members between October 7, 2020, through the present. *See* Dkt. No. 1, ¶33. This information is critical for determining the violation rate based on Defendants' alleged figures yet is patently and fatally vague.

Here, within their Notice of Removal, Defendants assume that *all* putative class members experienced multiple violations for rest periods and meal periods, wage statements, and waiting time penalties. However, as discussed above, Defendants give no information regarding the putative class members' hours to include all putative class members in their damage calculations for claims such as violation rates for rest and meal periods. Moreover, Plaintiff's FAC does not allege every single putative class member always worked a certain amount of hours per day to require a meal period for Defendants to have made this presumption. Presumably, this critical information was withheld or likely not even considered for the sake of maximizing the amount in controversy.

For example, Defendants assume that (i) meal period violations occurred at a rate of at least 40% totaling "$2,190,448.60" [103,309 alleged non-compliant meal break shifts x $21.29 average wage rate]; (ii) rest period violations occurred at a rate of at least 40% totaling "$2,283,458.90" [107,225 alleged non-compliant rest break shifts x $21.29 average wage rate]; (iii) violations for unpaid minimum wages paid

in an amount totaling "$580,970"; (iv) penalties for failure to timely pay wages to discharged employees in an amount totaling "$1,930,543.20 (417 formerly employed employees x $19.29 per hour x 8 hours per day x 30 days."; and (v) penalties for failing to provide accurate wage statements total at least "$1,344,950" [(579 initial pay periods x $50) + (13,160 subsequent pay periods x $100 for subsequent violations)] *See* Dkt. No. 1 at ¶¶34, 38, 42, 46, and 55.

Without any explanation as to how Defendants reached their numbers (only assumptions), there is simply no basis to assume that their estimates are even remotely accurate. Defendants' failure to provide competent evidence is particularly inexcusable since Defendants, as the employer, have ready access to all the facts, records, and information necessary to support their amount in controversy calculations. Defendants have not laid or even provided any necessary foundation for the figures they rely upon and have, therefore, failed to put forth summary judgment type evidence upon which they can base their amount in controversy calculations.

The Complaint and Defendants' declaration do not support the inflated and liberal violation rates they arbitrarily assume.

**i. Defendants' Calculations for Unpaid Meal and Rest Period Premiums Are Baseless.**

Defendants *assume* that every putative class member experienced a meal period and rest period violation *every workweek*. *See* Dkt. No. 1, at 12:23-28, 13:13-21.) Defendants conveniently fail to provide a <u>single shred of evidence</u> in support of the assumptions underlying their calculations, much less the kind of detailed declaration describing the analysis of time, payroll and personnel records courts have

routinely held are necessary to support calculations regarding the amount in controversy. Defendants conveniently omit a single timecard, paystub, wage statement, work schedule, or other document to support the propriety of their meal and rest break violation rates. Thus, Defendants appear to have pulled all of their underlying figures out of thin air or withheld evidence strategically.

Courts in similar circumstances have found that assumptions of even just **one** meal and **one** rest period violation per week is too speculative when unsupported by any evidence. *See Armstrong v. Ruan Transp. Corp.*, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (noting that because "[d]efendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week, the Court finds [defendant] has failed to sustain its evidentiary burden for purposes of removal.") (internal quotation marks omitted); *see also e.g., Smith v. Diamond Resorts Mgmt.*, 2016 WL 356020, at *3 (C.D. Cal. Jan. 29, 2016); *Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 WL 5274283, at *3 (E.D. Cal. Sep. 16, 2013); *Ray v. Nordstrom, Inc.*, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9, 2011); *Ruby v. State Farm Gen. Ins. Co.*, 2010 WL 3069333, at *4-5 (N.D. Cal. Aug. 4, 2010).

Here, Defendants assume, without explanation, a minimum rate of 40% violations for meal ***and*** rest period for every putative class member, and, therefore, Defendants *could be liable* for $2,190,448.60 (missed meal period) and $2,283,458.90 (rest period premiums) for all putative class members. *See* Dkt. 1, at ¶¶34, 38. Defendants fail to introduce any evidence, let alone summary judgment type evidence, to support their assumption that every single putative class member

experienced a meal period **and** rest period violation every single week they were employed. Indeed, Defendants fail to lay foundation that <u>all</u> of the putative class members' shifts worked were of sufficient length to mandate the provision of meal and rest periods. For example, Defendants fail to provide any evidence as to the number of class members who worked shifts of over three-and-a-half (3.5) hours or five (5) hours. Without this information, it is impossible for the Court to determine how many putative class members may have suffered a meal or rest period violation during the relevant time period.[1]

Plaintiff's FAC does not allege that <u>every single putative class member</u> was entitled to a rest or meal period during the relevant time period. Nor do Plaintiffs allege that every single putative class member suffered a meal and rest period violation every workweek. Defendants' assumption is just that – assumption without any supporting evidence as required to meet the CAFA threshold jurisdiction amount in controversy. Defendants essentially assert that general allegations about denial of meal and rest break premiums are akin to Plaintiffs alleging the specific frequency of Plaintiffs' meal and rest break claims when in fact, there are no such allegations.

Similarly, in *Frias-Estrada v. Trek Retail Corp.*, 534 F.Supp.3d 1058 (N.D. Cal. 2021), the court remanded a nearly identical wage and hour action, finding that the removing defendant did not meet its burden of proof under CAFA. The complaint in *Frias-Estrada* alleged nearly identical language to the FAC in the instant case: "throughout the statutory period Defendants maintained a systematic, company-

[1] It is possible that some putative class members worked shifts of less than three-and-a-half (3.5) hours or five (5) hours, and therefore were not entitled to rest or meal periods. Including such shifts artificially inflates Defendants' analysis.

wide policy and practice" of California Labor Code violations. *Id.*, at 1063. The court rejected the argument that the defendant was entitled to assume a 100% violation rate and went on to find its more "conservative" assumptions, including a 20% violation rate for meal and rest period damages, "simply 'pulled from thin air' without any 'reasonable ground underlying them." *Id.*, at 1065 (quoting *Ibarra*, 775 F.3d at 1199).

"In the Court's view, the key question is rarely, if ever, whether a plaintiff used one word or another in her complaint, but rather whether the defendant meets its "burden to show that the estimated amount in controversy relied on reasonable assumptions." *See Ibarra*, at 1199; quoting *Jolene Peters v. TA Operating LLC, et al.*, 2023 WL 1070350, Case No. 22-CV-01831-JGB-SHKx (C.D. Cal., Jan. 26, 2023), at *7. That question, in turn, generally does not rest on whether the defendant has picked a low enough number. *Id*. "Courts in the Central District frequently hold that a defendant "may not rely on statistical assumptions to sustain the amount in controversy requirement" and "have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence." *Id.*; *See also Salazar v. Johnson & Johnson Consumer, Inc.*, 2018 WL 4560683, at *3 (C.D. Ca. Sept. 19, 2018).

"If one is going to assume a violation rate based on nothing more than language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting that a violation rate of 25% is any more or less reasonable than a violation rate of once per week or once per month." *Cackin v. Ingersoll-Rand Indus. U.S., Inc.*, 2021 WL 2222217, at *3 (C.D. Cal., June 2, 2021). Defendants' purported

40% violation rates "do[es] not take the place of evidence." *Vanegas v. DHL Express (USA), Inc.*, 2021 WL 1139743, at *4 (C.D. Cal., Mar. 24, 2021). The "calculation merely demonstrates how arbitrary [Defendants'] assumptions are: it shows how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold." *Id*.

Defendants' representation as to the amounts in controversy for meal and rest period premiums are thus speculative at best and must be rejected. *See Ibarra*, 775 F.3d at 1199 (finding that "a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."). Therefore, Defendants' meal and rest period unsubstantiated calculations are flawed and should be disregarded entirely.

**ii. Defendants' Calculations for Unpaid Minimum Wages, Waiting Time Penalties for Discharged Putative Class Members, and Wage Statement Violations Are Problematic.**

Defendants estimate that the amount in controversy for unpaid minimum, wages total at least $580,970. Defendants calculated this using the assumption that the 1,015 non-exempt employees during the Class Period worked approximately 268,138 shifts and that the lowest minimum wage paid during that period was $13.00 per hour. *See* Dkt. No. 1 at ¶ 42. Defendants did not distinguish whether all covered employees worked off-the-clock for each shift they worked but instead assumed that at least 5 minutes off-the-clock work was done per shift.

Defendants also estimated waiting time penalties for failure to timely pay final wages should total $1,930,543.20 (417 former employees x $19.29 average hourly

rate x 8 hours/day x 30 days). *See* Dkt. No. 1 at ¶46. Defendants' calculation is entirely groundless again for the same reasons as noted above. Defendants assume that they waited at least thirty (30) days after the terminated 822 putative class members' employment was terminated to tender final payment of their wages, and that every single one of the 417 putative class members is entitled to seven (8) hours' worth of penalties per day. *Id.* Once again, instead of basing their calculation on the facts of this case, Defendants simply assume that their estimates are applicable. This is insufficient to confer federal jurisdiction. *Ibarra,* 775 F.3d at 1197 (noting that a defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions"). As the Ninth Circuit noted in *Ibarra,* merely alleging a "pattern and practice" of doing something does not necessarily mean *always* doing something." *Id*., at 1198-99.

The Court should not rely on Defendants' penalty calculation when their only basis for this calculation is Defendants' own unsupported assertion that it is theoretically possible. Moreover, Defendants' maximum penalties approach to waiting time penalties was rejected by the Ninth Circuit in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000-01 (9th Cir. 2007) (overruled on other grounds) and again in *Garibay v. Archstone Communities LLC*, 539 Fed. Appx. 763, 764 (9th Cir. 2013).

In *Lowdermilk*, Oregon law permitted employees to recover a maximum of thirty (30) days in penalty wages for an employer's failure to timely pay wages upon termination. *Lowdermilk*, 479 F.3d at 1000. The Court found that the defendant

failed to meet its burden of proof that maximum penalties were appropriate stating:[2]

> Defendant assumes that all class members would be entitled to the maximum damages…but provides no evidence to support this assertion…Many employees may have been paid only a few days late and, consequently, would be entitled to fewer days of penalty wages…Again, absent more concrete evidence, **it is nearly impossible to estimate with *any* certainty** the actual amount in controversy.
>
> *Id.* (emphasis added).

Courts in similar circumstances have also rejected Defendants' maximum penalties calculations. *See e.g., Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *7 (S.D. Cal. Nov. 26, 2012) (rejecting defendant's maximum waiting time penalties calculation because plaintiff's complaint used the words "up to" a thirty day maximum and defendant failed to submit any evidence to support its assumption); *Mook v. Regis Corp.*, 2009 WL 10672049, at *4 (S.D. Cal. February 18, 2009) (rejecting defendant's maximum waiting time penalties calculation because defendant failed to provide supporting evidence "that all employees whose employment with Defendant terminated regularly worked 8 hour days" and "[g]iven Defendant's statement that '[t]he vast majority of . . . employees work full-time,' it is a reasonable inference that some of those no longer working for Defendant worked part-time.").

Akin to the Defendants in the cases cited above, Defendants' calculation here is entirely speculative. Defendants assert, again without providing any evidence in support, that they waited at least thirty (30) days after these employees' separation

[2] Even though the courts in *Lowdermilk* and *Garibay* applied a "legal certainty" standard, their reasoning is still applicable.

to tender final payment of their wages. *See* Dkt. No. 1 at ¶43. Defendants also assume that each of these 417 putative class members are entitled to eight (8) hours' worth of penalties per day even though they have not established that all 822 terminated putative class members worked eight (8) hours per day. Defendants provide no evidence to support their assumption that 822 employees are entitled to the maximum amount of damages.

Like with their flawed calculations for waiting time penalties, Defendants calculation of $1,344,950 for wage statement violations is entirely speculative and assumes a **100%** violation rate. *See* Dkt. 1, at ¶55. Here too, Defendants provides no evidence to support their assumption that 579 putative class members are entitled to the maximum amount of damages for wage statement violations. However, again critically Defendants provide no information in their declaration and even fail to cite any source regarding the information it utilized to create this number. Accordingly, Defendants have failed to establish by a preponderance of the evidence the amount in controversy for waiting time penalties and wage statement violations, and therefore their calculation should therefore be disregarded.

**iii. Defendants' Inclusion of the Amount in Controversy for Attorneys' Fees Is Improper.**

Defendants then attempt to sneak in a catch-all of attorneys' fees without properly setting forth a precise amount by referring to a twenty-five percent (25%) benchmark in the Ninth Circuit without performing the calculation. *See* Dkt. 1, ¶48. As the Ninth Circuit opined, "…if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy. The defendant retains the burden, however,

of proving the amount of future attorneys' fees by a preponderance of the evidence." *Fritsch v. Swift Transp. Co.*, 899 F.3d 785, 788 (9th Cir. 2018). Defendants have not met their burden in proving the amount in controversy for attorneys' fees.

In its Notice of Removal, Defendants present no evidence in support of a twenty-five percent (25%) fee. *See* Dkt. 1 at ¶56. Furthermore, this twenty-five percent (25%) was based solely off of the improper assumptions listed above, making Defendants' arguments a fatally-flawed house of cards. As there is no *per se* rule that twenty-five percent (25%) of the recovery is a reasonable estimate of attorneys' fees, Defendants were required to provide proof that their estimate of attorneys' fees is reasonable by a preponderance of the evidence. Even if twenty-five percent (25%) were appropriate, Defendants improperly seek to calculate the fee based on their deeply flawed calculations as to all claims, without regard for the fact that attorneys' fees can only be counted toward the amount in controversy if "an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Fritsch*, 899 F.3d at 795-96. Of the claims for which Defendants included, only Plaintiffs' claims for non-compliant wage statements have underlying statutes which expressly authorize an award of attorneys' fees. Accordingly, Defendants failed to meet their burden of proof, and any attorneys' fees calculations should be disregarded. As Defendants' amount in controversy calculations appear to be aspirational instead of empirical, they do not meet CAFA requirements and thus there is no subject matter jurisdiction for this claim.

## V. CONCLUSION.

All of the information contained within Defendants' Notice of Removal is completely unsupported and this Court does not have subject matter jurisdiction to hear this matter. This case should be remanded because even though Defendants have within their possession the numbers of putative class members at issue for purposes of calculating waiting time penalties, meal and rest break violations, and wage statement violations, Defendants completely omitted any supporting facts. Defendants relied on a slew of unsubstantiated assumptions and no actual evidence. As such, Defendants failed to meet their burden of establishing CAFA jurisdiction. Plaintiff, therefore, respectfully requests that this Court remand this case to the San Bernardino Superior Court, where it rightfully belongs.

DATED: January 21, 2024

**PROTECTION LAW GROUP, LLP**

By: /s/ Heather Davis
Heather Davis
Brendan J. Burton
Shadi Sahebghalam
*Attorneys for* Plaintiff
MIREYA MARTINEZ