MORGAN, LEWIS & BOCKIUS LLP
Andrew P. Frederick, State Bar No. 284832
andrew.frederick@morganlewis.com
Michelle L. Quach, State Bar No. 335098
michelle.quach@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel: +1.650.843.4000
Fax: +1.650.843.4001

Attorneys for Defendants
CENCORA, INC.; AMERISOURCEBERGEN DRUG CORP.; AMERISOURCEBERGEN SERVICES CORP.; AMERISOURCEBERGEN SPECIALTY GROUP, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MIREYA MARTINEZ, individually and on behalf of others similarly situated,

Plaintiff,

vs.

CENCORA, INC., a Delaware corporation; AMERISOURCEBERGEN DRUG CORPORATION, a Delaware corporation; AMERISOURCEBERGEN SERVICES CORPORATION, a Delaware corporation; AMERISOURCEBERGEN SPECIALTY GROUP, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,

Defendants.

Case No. 5:24-cv-02663-MRA-SHK

[Assigned for all purposes to Judge Mónica Ramírez Almadani]

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND TO STATE COURT**

Date: March 17, 2025
Time: 1:30 p.m.
Courtroom: 10B

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .... 1

II. PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY .... 2

- A. Plaintiff's Putative Wage & Hour Class Claims .... 2
- B. Defendants' Notice of Removal .... 2

III. LEGAL ARGUMENT .... 3

- A. Plaintiff Misstates the Governing Legal Standards for Analyzing CAFA Removals. .... 3
  - 1. A Notice of Removal Need Only Plead a Plausible Basis for Subject Matter Jurisdiction. .... 3
  - 2. There Is No Presumption Against Removal Under CAFA. .... 4
  - 3. Defendants' Burden in Establishing the Amount in Controversy Is Minimal and May Be Satisfied with a Supporting Declaration. .... 5
- B. Defendants Establish by a Preponderance of Evidence That Plaintiff's Complaint Places More Than $5,000,000 in Controversy. .... 7
  - 1. Plaintiff's Minimum Wage Claim Places at Least $580,970 in Controversy. .... 9
  - 2. Plaintiff's Meal and Rest Break Claims Place at Least $2,199,448.61 and $2,283,458.95 in Controversy, Respectively. .... 10
  - 3. Plaintiff's Wage Statement Claim Places at Least $1,344,950 in Controversy. .... 13
  - 4. Plaintiff's Untimely Payment of Wages Claim Places at Least $1,373,900 in Controversy. .... 15
  - 5. Plaintiff's Claim for Waiting Time Penalties Places At Least $1,930,543.20 in Controversy. .... 16
  - 6. Plaintiff's Alleged Attorneys' Fees Place at Least $2,428,317.69 in Controversy. .... 19
  - 7. Plaintiff's Arguments Supporting Remand Are Unavailing. .... 20

IV. CONCLUSION .... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrego Abrego v. The Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) .......... 4

*Al-Najjar v. Kindred Healthcare Operating, Inc.*,
No. 17-cv-6166-PSG, 2017 WL 4862067 (C.D. Cal. Oct. 26, 2017) .......... 11

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) .......... *passim*

*Arreola v. Finish Line*,
No. 14-cv-03339-LHK, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) .......... 10

*Avila v. Northwood Hospitality LLC*,
No. 2:23-cv-09598-SB, 2024 WL 416366 (C.D. Cal. Feb. 5, 2024) .......... 18, 20

*Avila v. Rue21, Inc.*,
432 F. Supp. 3d 1175 (E.D. Cal. 2020) .......... 19

*Bermejo v. Lab'y. Corp.*,
No. 20-cv-05337-DMG, 2020 WL 6392558 (C.D. Cal. Nov. 2, 2020) .......... 15

*Betancourt v. OS Rest. Servs., LLC*,
83 Cal. App. 5th 132 (2022) .......... 21

*Bryan v. Wal-Mart Stores, Inc.*,
No. 8-cv-05221-SI, 2009 WL 440485 (N.D. Cal. Feb. 23, 2009) .......... 6

*Carlos Moreno v. JCT Logistics, Inc.*,
No. 17-cv-02489-JGB, 2018 WL 1415179 (C.D. Cal. Mar. 21, 2018) .......... 11

*Cavada v. Inter-Continental Hotels Group, Inc.*,
No. 19-cv-01675-GPC, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) .......... 15

*Chan v. Panera*,
No. 2:23-cv-04194-JLS, 2023 WL 6367677 (C.D. Cal. Sept. 28, 2023) .......... 17, 18, 19

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413 (9th Cir. 2018) .......... 6

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .......... 1, 3, 4

*Donald v. Xanitos, Inc.*,
No. 14-cv-05416-WHO, 2015 WL 1774870 (N.D. Cal. 2015) .......... 5

*Duncan v. Baxalta US Inc.*,
No. 2:24-cv-09388-RGK, 2025 WL 40482 (C.D. Cal. Jan. 7, 2025) .......... 18

*Ehrman v. Cox Commc'ns, Inc.*,
932 F.3d 1223 (9th Cir. 2019) .......... 3

*Feao v. UFP Riverside, LLC*,
No. 17-cv-03080-PSG, 2017 WL 2836207 (C.D. Cal. June 29, 2017) .......... 13

*Ford v. CEC Entm't, Inc.*,
No. 14-cv-01420-RS,2014 WL 3377990 (N.D. Cal. July 10, 2014) .......... 14

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
899 F.3d 785 (9th Cir. 2018) .......... 20

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) .......... 4

*Ibarra v. Manheim Investments, Inc.*,
775 F.3d 1193 (9th Cir. 2015) .......... 23

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
28 F.4th 989 (9th Cir. 2022) .......... *passim*

*Jordan v. Nationstar Mortg. LLC*,
781 F.3d 1178 (9th Cir. 2015) .......... 4

*Kastler v. Oh My Green, Inc.*,
No. 19-cv-02411-HSG, 2019 WL 5536198 (N.D. Cal. Oct. 25, 2019) .......... 10

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010) .......... 7

*Lopez v. Adidas America, Inc.*,
No. 2:21-cv-00447-MCS, 2021 WL 927265 (C.D. Cal. Mar. 11, 2021) ........ 13, 15, 20, 21

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
479 F.3d 994 (9th Cir. 2007) ........ 19

*Lucas v. Michael Kors (USA), Inc.*,
No. 18-cv-01608-MWF, 2018 WL 2146403 (C.D. Cal. May 9, 2018) ........ 13

*Martinez v. Sunnova Energy Corp.*,
No. 2:24-cv-06346-MRA-MAR, 2024 WL 4892513 (C.D. Cal. Nov. 25, 2024) ........ 5, 6, 13

*Mortley v. Express Pipe & Supply Co.*,
No. 17-cv-01938-JLS, 2018 WL 708115 (C.D. Cal. Feb. 5, 2018) ........ 6, 13

*Muniz v. Pilot Travel Centers LLC*,
No. 07-cv-00325-FCD, 2007 WL 1302504 (E.D. Cal. May 1, 2007) ........ 6

*Naranjo v. Spectrum Sec. Servs., Inc.*,
13 Cal.5th 93 (2022) ........ 14

*Oda v. Gucci Am., Inc.*,
No. 2:14-cv-07468-SVW, 2015 WL 93335 (C.D. Cal. Jan. 7, 2015) ........ 6

*Parsittie v. Schneider Logistics, Inc.*,
No. 19-cv-03981-MWF, 2019 WL 6792807 (C.D. Cal. Aug. 13, 2019) ........ 15

*Perez v. Qantas Airways Ltd.*,
No. 23-cv-08620-KK, 2023 WL 9020563 (C.D. Cal. Dec. 19, 2023) ........ 21

*Ramirez v. Benihana Nat'l Corp.*,
No. 18-cv-05575-MMC, 2019 WL 131843 (N.D. Cal. Jan. 8, 2019) ........ 20

*Ruano v. Sears Roebuck & Co.*,
No. 15-cv-06060-PSG, 2015 WL 6758130 (C.D. Cal. Nov. 5, 2015) ........ 7

*Serrieh v. Jill Acquisition LLC*,
No. 2:23-cv-00292-DAD, 2023 WL 8796717 (E.D. Cal. Dec. 20, 2023) ........ 7, 19

*Singer v. Becton, Dickinson & Co.*,
No. 08-cv-00821-IEG, 2008 WL 2899825 (S.D. Cal. July 25, 2008) ........ 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......... 20

*Thompson v. Fastaff, LLC*,
No. 2:22-cv-03584-SVW, 2022 WL 4109450 (C.D. Cal. Sep. 8, 2022) .......... 18

*Valdez v. Allstate Ins. Co.*,
372 F.3d 1115 (9th Cir. 2004) .......... 4

*Wheatley v. MasterBrand Cabinets, LLC*,
No. 18-cv-02127-JGB, 2019 WL 688209 (C.D. Cal. Feb. 19, 2019) .......... 7, 13, 15

**STATUTES**

CAFA .......... *passim*

Cal. Code Civ. Proc. § 340(a) .......... 15

Cal. Lab. Code § 202 .......... 17

Cal. Lab. Code § 203 .......... 18

Cal. Lab. Code § 218.5 .......... 21

Cal. Lab. Code § 1182.12 .......... 11

Cal. Lab. Code § 1194(a) .......... 21

Cal. Lab. Code § 1194.2 .......... 9, 11

Lab. Code § 210 .......... 16, 17

Lab. Code § 226.7 .......... 11

**OTHER AUTHORITIES**

IWC Wage Order 9, § 12(A) .......... 11

## I. INTRODUCTION

In an effort to evade this Court's jurisdiction, Plaintiff Mireya Martinez ("Plaintiff") misstates the governing law concerning removals under the Class Action Fairness Act ("CAFA"). Consistent with the U.S. Supreme Court's decision in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) ("*Dart Cherokee*") and the Ninth Circuit's decision in *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019), Defendants plausibly pled CAFA jurisdiction in its Notice of Removal ("Removal") by establishing that there are at least 100 putative class members, minimal diversity exists, and the amount in controversy exceeds $5 million.[1] Plaintiff's Motion to Remand ("Motion") challenges CAFA jurisdiction on the grounds that: (1) Defendants did not submit supporting evidence with their Removal to establish that the amount in controversy exceeds $5 million and (2) the assumptions used for the amount-in-controversy calculations are unreasonable. Both challenges lack merit.

The U.S. Supreme Court has rejected Plaintiff's main argument – that a notice of removal must be supported by evidence. In *Dart Cherokee*, the Court held that "no antiremoval presumption attends cases involving CAFA" and a notice of removal "need not contain evidentiary submissions." *Id.* at 82, 84. Rather, a notice of removal need only include "a short and plain statement of the grounds for removal," including "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 87, 89. Thus, Defendants were not obligated to support the Removal with evidence. In support of her allegations, Plaintiff misleadingly cites decisions that predate *Dart Cherokee* and are no longer good law in the CAFA context.

Now that Plaintiff *has* challenged whether the First Amended Complaint

---

[1] Collectively, the Defendants are: Cencora, Inc., AmerisourceBergen Drug Corporation ("ABDC"), AmerisourceBergen Services Corporation, and AmerisourceBergen Specialty Group, LLC.

places into controversy the requisite amount for CAFA jurisdiction, Defendants through this Opposition show that the amount in controversy more likely than not exceeds $5 million and that CAFA jurisdiction is proper. To support their amount-in-controversy calculations, Defendants reasonably rely upon Plaintiff's allegations in the First Amended Complaint as well as a Company declaration submitted with this Opposition.

In sum, Plaintiff's challenge to Defendants' Removal lacks any basis in law or fact. Accordingly, the Court should deny Plaintiff's Motion.

## II. PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

### A. Plaintiff's Putative Wage & Hour Class Claims

On October 7, 2024, Plaintiff filed her putative class action complaint in San Bernardino County Superior Court. ECF No. 1-1. On November 21, 2024, Plaintiff filed her First Amended Complaint (hereafter, "the Complaint"). ECF No. 1-4. The Complaint alleges the following claims on behalf of a putative California class: (1) failure to pay overtime wages; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to pay minimum wages; (5) failure to pay all wages due upon termination; (6) failure to timely pay wages during employment; (7) failure to provide accurate wage statements; and (8) violation of the Unfair Competition Law. *Id.* Plaintiff seeks to represent a putative class defined as "all current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the certified class action is provided to the class." Compl., ¶ 16.

### B. Defendants' Notice of Removal

On December 18, 2024, Defendants removed this action to this Court based on CAFA diversity jurisdiction. ECF No. 1 ("Removal"). As stated in the Removal, the Court has CAFA jurisdiction because minimal diversity exists, the putative class consists of 100 or more individuals, and the amount in controversy

exceeds, in the aggregate, $5,000,000, exclusive of interest and costs. *Id.*, ¶ 12. Defendants calculated over $12 million in controversy based on six of Plaintiff's eight putative wage and hour class claims. *Id.*, ¶¶ 56-59.

## III. LEGAL ARGUMENT

### A. Plaintiff Misstates the Governing Legal Standards for Analyzing CAFA Removals.

In her Motion, Plaintiff misrepresents the governing legal standards for removals under CAFA. Contrary to Plaintiff's assertions, a notice of removal does not require evidentiary submissions, unless challenged; no presumption against CAFA removal exists; the defendant's evidentiary burden in establishing the amount in controversy, once challenged, is minimal; and the removing party may rely on reasonable assumptions in demonstrating the amount in controversy.

#### 1. A Notice of Removal Need Only Plead a Plausible Basis for Subject Matter Jurisdiction.

As the U.S. Supreme Court held in *Dart Cherokee*, a removing defendant is *not* required to submit any evidence with the Removal, and instead need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." 574 U.S. at 89; *see also Arias*, 936 F.3d at 922 ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements."); *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1223 (9th Cir. 2019) ("Congress enacted CAFA to *facilitate* adjudication of certain class actions in federal court. In keeping with that purpose, we require removing defendants to provide only a short and plain statement of the grounds for removal.").

Defendants' Removal more than satisfies this basic pleading standard. Only when removal is contested does a court then consider allegations in the complaint along with evidence relevant to the amount in controversy. *Dart Cherokee*, 574 U.S. at 89.

### 2. <u>There Is No Presumption Against Removal Under CAFA.</u>

In *Dart Cherokee*, the Supreme Court held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." 574 U.S. at 82. Relying upon *Dart Cherokee*, the Ninth Circuit in *Arias* explained that "the Supreme Court has made clear that regardless of whether . . . a presumption [against federal jurisdiction] exists in run-of-the-mill diversity cases, 'no antiremoval presumption attends cases invoking CAFA.'" *Arias*, 936 F.3d at 922 (quoting *Dart Cherokee*, 574 U.S. at 82).

Nonetheless, Plaintiff misleadingly argues that the Court should apply an antiremoval presumption in this CAFA action. *See, e.g.*, ECF No. 13 at 11:2-11 (arguing that "[r]emoval is generally disfavored and, 'where doubt regarding the right to removal exists, a case should be remanded to state court.'"), 11:12-19 (same). In advocating for the Court to apply the wrong legal standard, Plaintiff relies upon decisions that predate *Dart Cherokee*, some of which even predate CAFA's enactment in 2005. *See Valdez v. Allstate Ins. Co*., 372 F.3d 1115 (9th Cir. 2004); *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992); *Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676 (9th Cir. 2006). These decisions have no precedential value because, as the Ninth Circuit has held, its prior rulings strictly construing CAFA removal requirements are irreconcilable with *Dart Cherokee* and undermine the very purpose of CAFA: to have class actions, like this one, heard in federal court. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

Indeed, the Ninth Circuit recently reiterated that no antiremoval presumption exists for a CAFA removal and that courts must not "strictly construe the removal statute against removal jurisdiction." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). In *Jauregui*, the Ninth Circuit overturned a district court's remand order that failed to apply "an expansive understanding of CAFA" and viewed CAFA removals "with a level of skepticism and resistance"

that was "incorrect." *Id.* The Ninth Circuit held that it was improper for the district court to assign $0 to certain claims when it disagreed with the defendant's assumptions supporting its removal calculations. *Id.* at 996. Rather, the court held that where there is "a different, better assumption" then a district court must consider the claim's value "under the better assumption—not just zero-out the claim." *Id.*

### 3. Defendants' Burden in Establishing the Amount in Controversy Is Minimal and May Be Satisfied with a Supporting Declaration.[2]

Contrary to Plaintiff's argument, *see* ECF No. 13 at 13:15-15:21, Defendants' burden in establishing the amount in controversy is not onerous. *See Martinez v. Sunnova Energy Corp.*, No. 2:24-cv-06346-MRA-MAR, 2024 WL 4892513, at *4 (C.D. Cal. Nov. 25, 2024) ("defendant is not expected to prove Plaintiff's case while demonstrating an appropriate amount in controversy"); *Donald v. Xanitos, Inc.*, No. 14-cv-05416-WHO, 2015 WL 1774870, at *4 (N.D. Cal. 2015) (explaining that the burden is "not daunting" and does not require the removing party to "research, state, and prove the plaintiff's claims for damages"); *Mortley v. Express Pipe & Supply Co.*, No. 17-cv-01938-JLS, 2018 WL 708115, at *2 (C.D. Cal. Feb. 5, 2018). Defendants have "no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to Plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Centers LLC*, No. 07-cv-00325-FCD, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007).

Instead, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias*,

---

[2] While Plaintiff does not challenge that minimal diversity of citizenship exists, thereby conceding that it does, Defendants nevertheless submit the declarations of Susan Coldren and Ben Nguyen showing that minimal diversity exists. *See* Declaration of Susan Coldren ("Coldren Decl."), ¶¶ 5-9; Declaration of Ben Nguyen ("Nguyen Decl."), ¶ 7(h).

936 F.3d at 927 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.*; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal); *Martinez*, 2024 WL 4892513, at *4 (finding that "defendant's assessment of a 100% violation rate is a reasonable evaluation of the *maximum* recovery the plaintiff could reasonably recover on his meal break and rest period claims") (emphasis in original).

Moreover, "the defendant's showing on the amount in controversy may rely on reasonable assumptions" and "need not be proven." *Arias*, 936 F.3d at 927 (holding that a defendant is not required to "prove it actually violated the law at the assumed rate"); *see also Oda v. Gucci Am., Inc.*, No. 2:14-cv-07468-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (stating that a removing defendant "is not required to comb through its records to identify and calculate the exact frequency of violations" and "[r]ather, [the defendant] is only required to prove the amount in controversy by a preponderance"); *Bryan v. Wal-Mart Stores, Inc.*, No. 8-cv-05221-SI, 2009 WL 440485, *3 (N.D. Cal. Feb. 23, 2009).

Further, declarations easily satisfy a defendant's evidentiary burden that the amount-in-controversy has been satisfied. *See, e.g.*, *Lewis*, 627 F.3d at 397 ("To satisfy its burden in this case, the removing defendant . . . supplied an affidavit to show that the potential damages could exceed the jurisdictional amount. We conclude that this showing satisfies Verizon's burden."); *see also Jauregui*, 28 F.4th at 993-94 (approving use of a declaration from a senior payroll lead to support employer's amount-in-controversy analysis); *Serrieh v. Jill Acquisition LLC*, No. 2:23-cv-00292-DAD, 2023 WL 8796717, at *3 (E.D. Cal. Dec. 20, 2023) (finding declaration of employer's human resources director sufficient); *Wheatley v. MasterBrand Cabinets, LLC*, No. 18-cv-02127-JGB, 2019 WL 688209, at *3 (C.D.

Cal. Feb. 19, 2019) (finding declaration of Vice President of Human Resources sufficient); *Ruano v. Sears Roebuck & Co.*, No. 15-cv-06060-PSG, 2015 WL 6758130, at *4 (C.D. Cal. Nov. 5, 2015) ("A declaration from a person with knowledge of the relevant data is clearly an appropriate form of evidence.").

With its Opposition, Defendants properly support their amount-in-controversy calculations through the declaration of HRIS Manager, Ben Nguyen. In his role as HRIS Manager, Mr. Nguyen has access to personnel, timekeeping, and payroll records and related information and data for Defendants' employees, including employees in California, that have been created and maintained in the normal course of Defendants' business. Nguyen Decl., ¶ 3. He regularly uses and relies upon these records, information, and data in connection with his work responsibilities. *Id.* Mr. Nguyen accessed and analyzed personnel, timekeeping, and payroll data for putative class members to provide the data Defendants use in performing their amount-in-controversy calculations. *Id.*, ¶¶ 4-6. Mr. Nguyen limited his analysis to those individuals employed by Defendant AmerisourceBergen Drug Corporation ("ABDC") as hourly employees in California, since ABDC is the entity that employed Plaintiff. *Id.* As such, Plaintiff's assertion that Defendants' calculations are not properly supported should be rejected.

### B. Defendants Establish by a Preponderance of Evidence That Plaintiff's Complaint Places More Than $5,000,000 in Controversy.

Based on conservative assumptions and reasonable inferences from the First Amended Complaint's allegations, Plaintiff's claims for relief place more than $5,000,000 in controversy, as shown in the chart here.[3]

[3] Defendants limit their calculations to putative class members who worked for ABDC; when limited to ABDC, there are at least 1,015 putative class members. Nguyen Decl., ¶ 7(a). Minimal diversity exists because Plaintiff is a citizen of

| Claim | Amount in Controversy |
|---|---|
| Minimum Wages | $580,970.00 |
| Meal period premiums | $2,199,448.61 |
| Rest period premiums | $2,283,458.95 |
| Waiting Time Penalties | $1,930,543.20 |
| Untimely Wage Payments | $1,373,900.00 |
| Wage Statement Penalties | $1,344,950.00 |
| Attorneys' Fees | $2,428,317.69 |
| **TOTAL:** | **$12,141,588.45** |

In addition, in seeking remand, Plaintiff attempts to argue that Defendants incorrectly calculated the amount in controversy in that "Defendants assume that *all* putative class members experienced multiple violations." ECF No. 13 at pp. 13-14. However, in the Complaint, Plaintiff alleges that these same wage and hour violations were "ongoing and systematic," "regularly occurring," "routine," and a product of "Defendants' actual policy and practice." Compl., ¶¶, 25-41. Thus, as discussed further below, Defendants' amount-in-controversy calculations take these allegations—and others Plaintiff has pled—into account. Notably, the complete phrase that Plaintiff uses when referring to whom the alleged violations occurred is "Plaintiff, the Class, and the Aggrieved Employees." Compl., ¶¶ 25-41. Because courts are to construe allegations in favor of CAFA removal, the allegations should be construed as applying to all putative class members, not simply some of them as Plaintiff suggests in her Motion. Further, this interpretation is consistent with the very nature of Plaintiff's claims, i.e., they are pled on a *class* basis. Accordingly, Plaintiff cannot avoid CAFA jurisdiction when she seeks to represent a putative class of "all current and former non-exempt employees." Compl., ¶ 16.

---

California, while Defendants are citizens of Delaware, Pennsylvania, and Texas. Nguyen Decl., ¶ 7(h); Coldren Decl., ¶¶ 5, 8.

### 1. Plaintiff's Minimum Wage Claim Places at Least $580,970 in Controversy.

Plaintiff seeks to represent a putative class of individuals who were not paid at least minimum wage for all time worked since October 7, 2020. Compl., ¶ 78. In addition to the minimum wages allegedly not paid, Plaintiff also seeks a penalty in the form of liquidated damages. *Id.*, Prayer for Relief, ¶ 28; *see* Cal. Lab. Code § 1194.2 ("[A]n employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid.").

A reasonable reading of Plaintiff's minimum wage allegations (Compl., ¶¶ 25, 32, 38, 75-79) supports Defendants' conservative assumption that the Complaint places in controversy at least 5 minutes of purported off-the-clock work per shift. For example, Plaintiff alleges that "Defendants engaged in an ongoing and systematic scheme of wage abuse against their hourly-paid or non-exempt employees," which included "regularly requiring . . . off-the-clock work without compensation." Compl., ¶ 25. Plaintiff further alleges that Defendants "regularly" failed to pay putative class members at least minimum wages for all hours worked. *Id.*, ¶ 38; *see also* ¶ 77 ("Defendants regularly failed to pay minimum wage to Plaintiff and the other Class Members . . . .").

Courts have held that claims with more conservative allegations, *i.e.*, that violations occurred "at times" or "on occasion," reasonably support the assumption of at least one hour of unpaid wages each workweek. *See e.g.*, *Jauregui*, 28 F.4th at 994-95 n.5 (finding assumption that one hour of work a week went unpaid reasonable); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages *and* unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Arreola v. Finish Line*, No. 14-cv-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)

(finding one hour of unpaid wages per week, every week, for putative class members was reasonable).

Based on Plaintiff's allegation that Defendants regularly failed to pay all wages, including minimum wages, Defendants reasonably estimate that Plaintiff seeks at least 5 minutes off-the-clock work for each shift or 23.25 minutes of minimum wages per workweek since October 7, 2020.[4] Defendants' estimate of 23.25 minutes per workweek is more conservative than the one hour per workweek supported by the case law above. Because ABDC hourly employees have worked at least 57,659 workweeks in California during the putative class period, *see* Nguyen Decl. ¶ 7(a), that equates to approximately 22,345 hours of alleged off-the-clock work put at issue by the Complaint (57,659 workweeks x 23.25 minutes). Using the lowest minimum wage during the applicable time period ($13/hr),[5] that results in alleged unpaid minimum wages of $290,485 ($13/hr x 22,345 hours). When including liquidated damages, which is an amount equal to the underlying unpaid minimum wages, *see* Cal. Lab. Code § 1194.2, that results in a total estimated exposure of **$580,970** ($290,485 x 2) on the minimum wage claim.

### 2. Plaintiff's Meal and Rest Break Claims Place at Least $2,199,448.61 and $2,283,458.95 in Controversy, Respectively.

Plaintiff alleges that Defendants failed to provide her and other putative class members with compliant meal and rest breaks. Compl., ¶¶ 26-31, 55-74. California law generally requires an employer to provide a duty-free rest break to employees every four hours worked or major fraction thereof, except when an

---

[4] ABDC hourly employees in California worked an average of 4.65 shifts per workweek (268,138 shifts / 57,659 workweeks) during the putative class period, *see* Nguyen Decl., ¶ 7(e), which means that Defendants' conservative assumption of 5 minutes of off-the-clock work for each shift equates to 23.25 minutes of unpaid wages per workweek.

[5] Cal. Lab. Code § 1182.12(b)(1)(D) (minimum wage for employers with 26 or more employees was $13/hr in 2020).

employee works a shift lasting less than three-and-a-half hours. IWC Wage Order 9, § 12(A). California law also generally requires an employer to provide a duty-free meal break to employees working a shift longer than five hours. *Id.*, § 11(A). Labor Code Section 226.7 provides that if an employer fails to provide required meal or rest periods the employer shall pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period was not provided." Lab. Code § 226.7(c). If both a meal and rest period are denied to an employee, an employee may be able to recover "two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods." *Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. 17-cv-6166-PSG, 2017 WL 4862067, at *4 (C.D. Cal. Oct. 26, 2017); *see also Carlos Moreno v. JCT Logistics, Inc.*, No. 17-cv-02489-JGB, 2018 WL 1415179, at *4 (C.D. Cal. Mar. 21, 2018).

In her Motion, Plaintiff challenges the reasonableness of Defendants' amount-in-controversy calculations for alleged meal and rest period violations by improperly attempting to rewrite her putative class allegations in the Complaint. *See* ECF No. 13 at 16:22-17:20. Specifically, the Motion asserts that Plaintiff never alleged that "every single putative class member was entitled to a rest or meal period during the relevant time period," "nor do[es] Plaintiff allege that every single putative class member suffered a meal and rest period violation every workweek." ECF No. 13 at 17:11-15. But Plaintiff has brought this case on a class basis, which necessarily means that Plaintiff asserts a uniform application of Defendants' policy to deprive employees of lawful meal/rest breaks, such that the case can be adjudicated on a class basis. For class certification requirements to be met, there must be common questions of law and fact that predominate. Indeed, the Complaint alleges that "Defendants have implemented *policies and practices* which failed to provide Plaintiff and the Class with timely and duty-free meal periods. Defendants *routinely* failed to relieve Plaintiff and the Class of all duties during

their meal periods, *regularly* failed to relinquish control over Plaintiff and the Class during their meal periods, *regularly* failed to permit Plaintiff and the Class a reasonable opportunity to take their meal periods, and *regularly* impeded or discouraged Plaintiff and the Class from taking thirty (30) minute uninterrupted meal breaks. . ." Compl., ¶ 26 (emphasis added). The Complaint similarly alleges the same "routine," "regular," and "systematic" violations for Plaintiff's rest break claim. Compl., ¶ 29-30. Thus, Plaintiff's assertion that Defendants' assumed violation rates do not correlate with the language of the Complaint lacks merit and is belied by the very nature of the class claims that Plaintiff has pled.

This Court and other district courts have determined that in cases alleging substantially similar claims it was reasonable to assume at least a 40% violation rate. *See, e.g.*, *Martinez*, 2024 WL 4892513, at *4 (finding "100% violation is a reasonable evaluation of the 'maximum recovery the plaintiff could reasonably recover' on his meal break and rest period claims"); *Lopez v. Adidas America, Inc.*, No. 2:21-cv-00447-MCS, 2021 WL 927265, at *2-4 (C.D. Cal. Mar. 11, 2021) (finding 40% violation rate for alleged meal and rest break violations reasonable in light of policy and practice allegations); *Wheatley v. MasterBrand Cabinets, LLC*, No. 18-cv-02127-JGB, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) ("Because Plaintiff alleges a 'policy' of requiring employees to work through their meal and rest break periods . . . the Court finds Defendant's estimate of five meal break violations and three rest break violations per employee per week reasonable."); *Lucas v. Michael Kors (USA), Inc.*, No. 18-cv-01608-MWF, 2018 WL 2146403, at *4 (C.D. Cal. May 9, 2018) ("assumed violation rate of two missed meal/rest break periods per workweek [was] reasonable in light of the complaint's allegation that [the employer] had a 'consistent policy'" of failing to provide meal and rest periods); *Mortley*, 2018 WL 708115, at *4 (allegations of "company-wide policy and practice of understaffing" resulting in "routine and systematic violations" supported use of two missed meal and two missed rest

periods each week ); *Feao v. UFP Riverside, LLC*, No. 17-cv-03080-PSG, 2017 WL 2836207, at *3-4 (C.D. Cal. June 29, 2017) (60% meal and rest break violation rate reasonable based on "uniform policy and systematic scheme" allegations). Thus, Defendants reasonably assume a 40% violation rate for Plaintiff's alleged meal and rest break claims.

During the putative class period, ABDC hourly employees in California have worked at least 258,273 workdays with shifts over 5 hours and 268,138 workdays with shifts of 3.5 hours or longer. Nguyen Decl., ¶ 7(b)-(c). Applying a 40% violation rate results in 103,309 workdays with an alleged non-compliant meal period (258,273 x 0.4) and 107,255 workdays with an alleged non-compliant rest break (268,138 x 0.4). Accordingly, the amount in controversy for Plaintiff's meal and rest break claims, respectively, during the putative class is at least **$2,199,448.61** (103,309 x $21.29/hr) and **$2,283,458.95** (107,255 x $21.29/hr).[6]

### 3. Plaintiff's Wage Statement Claim Places at Least $1,344,950 in Controversy.

Defendants' amount-in-controversy calculations for Plaintiff's wage statement claim under Labor Code Section 226 are not "speculative" or "pulled from thin air." *See* ECF No. 13 at 19:7-15. Rather, Defendants' calculations are "supported directly by, or reasonably inferred from, the allegations in the complaint." *Ford v. CEC Entm't, Inc.*, No. 14-cv-01420-RS,2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014). In the Complaint, Plaintiff alleges "[t]hroughout the time period involved in this case, Defendants regularly failed to provide complete or accurate wage statements to Plaintiff and the Class." Compl., ¶ 40. As shown above with respect to the minimum wage and meal/rest period claims, and accounting for the "routine," "regular," and "systematic" allegations, the Complaint reasonably supports the assumption that Defendants failed to pay wages and meal/rest period premiums *on a weekly basis*. Compl., ¶¶ 41, 94. Plaintiff's wage

[6] During the putative class period, ABDC hourly employees in California have had an average hourly rate of pay of $21.29/hr. Nguyen Decl., ¶ 7(d).

statement claim is derivative of these underlying wage violations in that when allegedly failing to pay these wages Defendants also failed to document these wages on the wage statements issued to putative class members. *See, e.g., Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal.5th 93, 121 (2022) ("[A]n employer's obligation under Labor Code section 226 to report wages earned includes an obligation to report premium pay for missed breaks.").

Because ABDC paid wages and issued wage statements on a bi-weekly basis (*i.e.*, every two weeks), a 100% violation rate for Plaintiff's wage statement claim is reasonable based on the Complaint's allegations. *See, e.g.*, *Lopez*, 2021 WL 927265, at *2-3 (finding that a 100% violation rate for alleged wage statement violations was reasonable in light of policy and practice allegations); *Bermejo v. Lab'y. Corp.*, No. 20-cv-05337-DMG, 2020 WL 6392558, at *7 (C.D. Cal. Nov. 2, 2020) ("Similar to the waiting time penalties, given that Defendant can reasonably assume its alleged 'practices and policies' of underpaying wages translate to about one overtime, meal break, and rest break violation each per week, every wage statement (covering a two-week period) likely contained an alleged error."); *Wheatley*, 2019 WL 688209, at *7 ("Because Plaintiff's wage statement claim is 'derivative of [his] allegation that Defendant failed to pay him and the putative class members for all hours worked' [ ], Defendant may reasonably assume every wage statement contained at least one inaccuracy."); *Cavada v. Inter-Continental Hotels Group, Inc.*, No. 19-cv-01675-GPC, 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019) (finding that "since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties" and concluding that "a 100% violation rate is a reasonable assumption based on these claims"); *Parsittie v. Schneider Logistics, Inc.*, No. 19-cv-03981-MWF, 2019 WL 6792807, at *6 (C.D. Cal. Aug. 13, 2019) (same).

Labor Code section 226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a wage statement violation occurs and $100

for each subsequent pay period, up to a maximum of $4,000 per employee. The relevant statute of limitations is one year. *See* Cal. Code Civ. Proc. § 340(a).

From October 7, 2023, through December 10, 2024, ABDC paid wages and issued wage statements for hours worked to 579 hourly employees in California for a total of 13,739 pay periods. Nguyen Decl. ¶ 7(g). Therefore, Plaintiff's wage statement claim places in controversy at least **$1,344,950** in controversy [(579 initial pay periods x $50 for the first pay period) + (13,160 total subsequent pay periods x $100 per pay period)].[7]

#### 4. <u>Plaintiff's Untimely Payment of Wages Claim Places at Least $1,373,900 in Controversy</u>.

Plaintiff's derivative claim under Labor Code section 204 that Defendants failed to pay all wages due during each pay period supports a 100% violation rate. Compl., ¶¶ 40, 90-91. As shown above with respect to the minimum wage and meal/rest period claims, and accounting for the "regularly" allegations, the Complaint reasonably supports the assumption that Defendants failed to pay wages and meal/rest period premiums *on a weekly basis*. *See* Compl., ¶ 40. Because Defendants paid wages on a bi-weekly basis (*i.e.*, every two weeks), a 100% violation rate for Plaintiff's timely wage payment claim is reasonable based on the Complaint's allegations. *See supra* cases cited in Section III(B)(3). Indeed, Plaintiff does not challenge Defendants use of a 100% violation rate for her untimely payment of wages claim as her Motion lack any argument surrounding this claim. Because Section 210 provides for a penalty, claims asserting this Labor Code provision are subject to a one-year statute of limitations. *See Singer v. Becton, Dickinson & Co.*, No. 08-cv-00821-IEG, 2008 WL 2899825, at *3 (S.D. Cal. July 25, 2008).

---

[7] Because the highest number of pay periods worked by a putative class member during this time period was 31, no individual hit the $4,000 cap (*i.e.*, the max penalties for any individual was $3,050 ($50 + (30 pay periods x $100)). Nguyen Decl. ¶ 7(g).

From October 7, 2023, through December 10, 2024 ABDC paid wages and issued wage statements for hours worked to 579 hourly employees in California for a total of 13,739 pay periods. Nguyen Decl., ¶ 7(g). Assuming the minimal penalty rate under Labor Code Section 210 of $100 per pay period per employee,[8] Plaintiff's untimely payment of wages places at least **$1,373,900** in controversy (13,739 pay periods x $100 for initial violation). Cal. Lab. Code § 210.

**5. <u>Plaintiff's Claim for Waiting Time Penalties Places At Least $1,930,543.20 in Controversy.</u>**

As with Plaintiff's derivative timing-of-pay and wage statement claims, Plaintiff's derivative claim for waiting time penalties under Labor Code Section 203 also reasonably supports a 100% violation rate. *See* Compl., ¶¶ 39, 82-84. Putative class members whose employment with Defendants have ended need only have suffered a single alleged failure by Defendants to pay them wages due for waiting time penalties to be triggered. *See, e.g.*, *Chan v. Panera*, No. 2:23-cv-04194-JLS, 2023 WL 6367677, at *3 (C.D. Cal. Sept. 28, 2023) ("[B]ecause of the way California's waiting time penalties operate, a single violation, if unaddressed, would trigger penalties upon the employee's termination.").

At various points in the Complaint, Plaintiff alleges that "Defendants regularly failed to pay Plaintiff and the Class all wages owed to them upon discharge or resignation. Defendants knew or should have known that Plaintiff and the Class were entitled to receive all wages owed to them upon termination . . . Plaintiff and the Class did not receive payment of all final wages owed to them upon discharge or resignation." Compl. ¶ 39. Plaintiff also alleges that "Plaintiff and other Class Members who are no longer employed by Defendants are entitled to recover from Defendants the statutory penalty wages for each day they were not

[8] Labor Code Section 210 allows for recovery of statutory damages for a violation of Section 204's timing-of-pay requirements in the amount of $100 per pay period and $200 for any willful violation, plus 25% of the amount withhold. Here, Defendants uses the more conservative $100 per pay period amount.

paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." Compl., ¶¶ 83-84.

These allegations, in addition to those discussed in prior sections, reasonably support the assumption that every putative class member was underpaid wages ***at least once*** during their employment—whether that be in the form of minimum wages, overtime pay, meal/rest break premiums, etc. *See, e.g.*, *Duncan v. Baxalta US Inc.*, No. 2:24-cv-09388-RGK, 2025 WL 40482, at *3 (C.D. Cal. Jan. 7, 2025) ("[defendant's] assumption [of 100% violation rate for waiting time penalties] is reasonable because the amount of controversy reflects the *maximum* amount the plaintiff could possibly recover.") (emphasis in original); *Avila v. Northwood Hospitality LLC*, No. 2:23-cv-09598-SB, 2024 WL 416366, at *5 (C.D. Cal. Feb. 5, 2024) ("[E]very member of the subclass of terminated employees was necessarily owed money at termination and is consequently eligible for waiting time penalties."); *Chan*, 2023 WL 6367677, at *3 (deeming the defendant's 100% violation rate for waiting time penalties reasonable where [defendant] "assumed that every member of the proposed class suffered some type of wage-and-hour violation at least once during his or her employment"); *Thompson v. Fastaff, LLC*, No. 2:22-cv-03584-SVW, 2022 WL 4109450, at *2, 6-7 (C.D. Cal. Sep. 8, 2022) (finding 100% violation rate for waiting time penalties appropriate based on complaint's allegations that "employees were not timely paid within 30 days after leaving [defendant's] employ or that employees were not paid the correct amount").

To the extent Plaintiff suggests that Defendants cannot reasonably assume a maximum recovery of 30 days of wages under Section 203 for separated putative class members, she is wrong. Not only does Plaintiff seek 30 days of wages, *see* Compl., ¶ 84, but there are no allegations to suggest that the amounts allegedly sought have been paid. Courts have found that using the maximum 30-day recovery for waiting time penalties is also reasonable. Here, Defendants limit their calculations to before December 10, 2024, *see* Nguyen Decl., ¶ 7(f), and thus only

calculate waiting time penalties for putative class members whose employment ended before December 10, 2024 (*i.e.*, more than 30 days have passed since then).[9] *See, e.g.*, *Jauregui*, 28 F.4th at 993-94 (reasonable for employer to assume all terminated employees were entitled to maximum waiting time penalties, even if a small percentage might not be entitled to the maximum penalty); *Chan*, 2023 WL 6367677, at *4 ("It makes sense to assume that a terminated employee who was deprived of overtime and premium pay as a result of the company's general practice did not receive those wages after termination."); *Serrieh*, 2023 WL 8796717, at *5 ("[U]sing the maximum of thirty days is reasonable."); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("[I]t is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days.").

From October 7, 2021 through December 10, 2024, approximately 417 hourly employees in California separated from their employment with ABDC, with an average hourly rate of pay of $19.29 and average shift length of 8.60 hours at the time of separation. Nguyen Decl. ¶ 7(f). As such, the amount of waiting time penalties at issue through December 10, 2024, based on Plaintiff's allegations, is estimated at **$1,930,543.20** (417 employees x $19.29 per hour x 8 hours x 30 days).[10]

---

[9] Plaintiff relies on a Ninth Circuit decision, *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007), that is no longer good law. The fact that the Ninth Circuit in that decision applied a legal certainty test—a nearly impossible evidentiary threshold to meet—that was subsequently rejected renders the analysis wholly unreliable. Further, in *Jauregui*, the Ninth Circuit squarely held the opposite of *Lowdermilk* by finding that an employer reasonably could assume all terminated employees were entitled to maximum waiting time penalties. 28 F.4th at 993-94.

[10] While the average length of time worked by each of the 417 employees on a daily basis during the last 90 days of their employment was 8.60 hours, Defendants use the conservative assumption of 8 hours per day as it did in their notice of removal.

### 6. Plaintiff's Alleged Attorneys' Fees Place at Least $2,428,317.69 in Controversy.

Plaintiff does not dispute that a claim for attorneys' fees is properly included in the removal calculation. Rather, Plaintiff wrongly argues that Defendants' attorneys' fee calculation is incorrect because Defendants base their 25 percent benchmark "off of improper assumptions" as to the amount in controversy on the underlying claims. ECF No. 13 at 23:6-7. But Defendants ground their attorneys' fee calculation in the reasonable assumption that Plaintiff would be able to recover fees of at least 25 percent of the potential damages in this action, which is the recognized fees percentage of a common fund in a class action. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

Here, the amount in controversy includes $2,428,317.69 in alleged attorneys' fees (25% of $9,713,270.76). While the 25% benchmark does not automatically apply, the Ninth Circuit in *Arias* held that such an estimate "might be reasonable" for amount-in-controversy purposes. *Arias*, 936 F.3d at 923. Plaintiff provides no basis for deviating from that benchmark here, nor does Plaintiff state that she would seek a lower percentage of fees. *See Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018); *Avila*, 2024 WL 416366, at *5 (using 25% for calculating attorneys' fees for amount-in-controversy purposes); *Lopez*, 2021 WL 927265, at *4 (same); *Ramirez v. Benihana Nat'l Corp.*, No. 18-cv-05575-MMC, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019) (same).

Plaintiff also incorrectly argues that Defendants improperly calculate attorneys' fees as to all of Plaintiff's claims, without regard for the fact that attorneys' fees can only be counted toward the amount in controversy if an underlying statute authorizes an award of attorneys' fees. ECF No. 13 at 23:12-22. Contrary to Plaintiff's assertion that attorneys' fees can only be recovered for Plaintiff's wage statement claim, courts allow for the recovery of attorneys' fees for

all the claims at issue here, *i.e.*, Plaintiff's meal break, rest break, minimum wage, waiting time penalties, and untimely payment of wages claims. *See* Cal. Lab. Code § 218.5(a) (authorizing an attorneys' fees award brought for the nonpayment of wages if any party to the action requests attorney's fees and costs upon the initiation of the action); Cal. Lab. Code § 1194(a) (providing for an attorneys' fee award to employees who recover wages "less than the legal minimum wage or the legal overtime compensation"); *Betancourt v. OS Rest. Servs., LLC*, 83 Cal. App. 5th 132, 140 (2022) (attorneys' fees available for meal and rest break claims); *Lopez*, 2021 WL 927265, at *4 (holding a 25% benchmark for attorneys' fees for plaintiff's waiting time, wage statement, meal period, and rest period claims to support the CAFA amount in controversy as reasonable); *Perez v. Qantas Airways Ltd.*, No. 23-cv-08620-KK, 2023 WL 9020563, at *8 (C.D. Cal. Dec. 19, 2023) (same). Indeed, in the Complaint, Plaintiff expressly requests attorneys' fees for her unpaid overtime wages, meal break violations, and unpaid minimum wages claims. Compl., Prayer for Relief, ¶¶ 8, 15, 27.

As such, Defendants' assumption that **$2,428,317.69** in attorneys' fees has been placed in controversy by this wage and hour class action is reasonable.

In sum, Defendants have established that Plaintiff's Complaint places more than $5 million in controversy required for CAFA jurisdiction.

**7. <u>Plaintiff's Arguments Supporting Remand Are Unavailing.</u>**

The primary district court decisions upon which Plaintiff relies either predate the most recent, on-point Ninth Circuit authority—the *Arias* decision in September 2019 and the *Jauregui* decision in March 2022—or seemingly ignore these decisions altogether. Indeed, not a single one of the four decisions upon which Plaintiff relies since 2019 cites *Arias* or *Jauregui*, which severely undercuts the persuasive value of these decisions. *See* Opp. at 11-13. There are two material ways in which the decisions upon which Plaintiff relies go astray. First, these decisions appear to require defendants to submit evidence showing they *actually*

violated the law to satisfy their evidentiary burden. Second, these decisions appear to find that a defendant cannot rely upon the allegations in the complaint to derive a purported violation rate.[11] Neither of these approaches can withstand scrutiny after the Ninth Circuit's decisions in *Arias* and *Jauregui*.[12]

Indeed, both *Arias* and *Jauregui* endorsed a defendant's use of assumed violation rates reasonably drawn from the allegations in a plaintiff's complaint. *See* 936 F.3d at 925 ("An assumption may be reasonable if it is founded on the allegations of the complaint."). As the Ninth Circuit stated in *Jauregui*, "[A] CAFA defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*. At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy." 28 F.4th at 993. Similarly, in *Arias*, the Ninth Circuit observed

> The district court characterized Marriott's assumed violation rates as being "speculation and conjecture," apparently because Marriott did not provide evidence proving the assumptions correct. The district court seems to have imposed a requirement that Marriott prove it actually violated the law at the assumed rate. But assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have "some reasonable ground underlying them."

936 F.3d at 927 (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199

---

[11] For example, in *Vanegas v. DHL Express (USA), Inc.*, the court stated "the defendant must present evidence, not bare assumptions, as to the violation rate" and could not rely upon "pattern and practice" language in the complaint for deriving a purported violation rate. No. 21-cv-01538-PA, 2021 WL 1139743, at *3 (C.D. Cal. May 3, 2021). But this simply is not an accurate statement of the law in the Ninth Circuit after *Arias* and *Jauregui*.

[12] In reversing the district court's remand decision, the Ninth Circuit in *Jauregui* criticized the lower court for "impos[ing] a heavy burden on Defendant to prove that the case belongs in federal court. This threshold posture contravenes the text and understanding of CAFA and ignores precedent. CAFA significantly expanded federal jurisdiction in diversity class actions." 28 F.4th at 992.

(9th Cir. 2015)).

As such, as the Ninth Circuit instructs, a plaintiff's allegations in the complaint absolutely can supply a purported violation rate. That certain allegations may give rise to a *range* of potentially reasonable violation rates, rather than a singular rate, is entirely consistent with the teachings in *Arias* and *Jauregui*. *See Jauregui*, 28 F.4th at 993 ("As is inescapable at this early stage of the litigation, the removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable.").

Consistent with *Arias* and *Jauregui*, Defendants' calculations are reasonably grounded in the Complaint's allegations and the supporting evidence submitted with this Opposition.

## IV. CONCLUSION

Defendants have presented a reasonable, properly supported assessment of the amounts in controversy as to Plaintiff's putative class claims, and Defendants therefore have shown that CAFA's amount-in-controversy requirement is satisfied. The Court thus has subject matter jurisdiction over this action under CAFA and should deny Plaintiff's Motion to Remand.

Dated: February 11, 2025

MORGAN, LEWIS & BOCKIUS LLP

By /s/ *Andrew P. Frederick*
Andrew P. Frederick
Michelle L. Quach

Attorneys for Defendants
CENCORA, INC.;
AMERISOURCEBERGEN DRUG CORP.;
AMERISOURCEBERGEN SERVICES CORP.; AMERISOURCEBERGEN SPECIALTY GROUP, LLC

**Local Rule 11-6.2 Certification of Compliance**

The undersigned, counsel of record for Defendant certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 11, 2025

MORGAN, LEWIS & BOCKIUS LLP

By *\/s/ Andrew P. Frederick*

Andrew P. Frederick
Michelle L. Quach

Attorneys for Defendants
CENCORA, INC.;
AMERISOURCEBERGEN DRUG CORP.;
AMERISOURCEBERGEN SERVICES CORP.; AMERISOURCEBERGEN SPECIALTY GROUP, LLC