UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Gabriela Garcia | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION TO REMAND [ECF 13]**

Before the Court is Plaintiff's Motion to Remand this case to San Bernardino Superior Court ("Motion" or "Motion to Remand"). ECF 13. The Court read and considered the moving, opposing, and reply papers and deemed the Motion appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** the Motion to Remand.

## I.   BACKGROUND

Plaintiff Mireya Martinez ("Plaintiff" or "Martinez") brought this putative class action against pharmaceutical companies Cencora, Inc., Amerisourcebergen Drug Corporation, Amerisourcebergen Services Corporation, Amerisourcebergen Specialty Group, LLC, and Does 1–50 (collectively "Defendants"), alleging various violations of the California Labor Code and the California Business and Professions Code.[1] ECF 1-4. Plaintiff began working for Defendants in February 2022 as a Warehouse Associate. *Id.* at 8. Plaintiff alleges that, from the time she began working for Defendants until the time she initiated this lawsuit, Defendants regularly failed to comply with state labor laws. *Id.* at 8–14.

Based on these alleged violations, Plaintiff brings the following causes of action: (1) failure to pay adequate overtime wages (in violation of Cal. Lab. Code §§ 510 & 1198); (2) failure to

---

[1] Plaintiff brings this action on behalf of herself and all others similarly situated, defining the proposed class as: "All current and former non-exempt employees of any of the Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the certified class action is provided to the class . . . ." ECF 1-4 at 5–6. Because Plaintiff filed her original complaint on October 7, 2024, the class period extends from October 7, 2020, to October 7, 2024. ECF 1 at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

provide adequate meal and rest breaks (in violation of Cal. Lab. Code §§226.7 & 512(a)); (3) failure to provide adequate rest periods (in violation of Cal. Lab. Code § 226.7); (4) failure to provide minimum wages (in violation of Cal. Lab. Code §§ 1194, 1197, 1197.1); (5) failure to pay wages to workers who quit or are terminated within an appropriate time period (in violation of Cal. Lab. Code §§ 201, 202, 203); (6) failure to pay all current employees' wages within an appropriate time period (in violation of Cal. Lab. Code §§ 204 & 210); (7) failure to provide employees with accurate wage statements (in violation of Cal. Lab. Code § 226(a)); (8) for restitution of wages, attorneys' fees, and costs (under Cal. Bus. & Prof. Code §§ 17200 *et seq.* and Cal. Code Civ. Proc. § 1021.5); and (9) as a private attorney general for all labor code violations on behalf of herself and all other similarly situated (under Cal. Lab. Code § 2699 *et seq.* ("PAGA")).

On October 7, 2024, Plaintiff filed this action. *See* ECF 1 at 14. On December 18, 2024, Defendants removed the case to federal court, arguing that the Court had jurisdiction to hear the case under the Class Action Fairness Act ("CAFA"). ECF 1. On January 21, 2025, Plaintiff moved to remand the action back to state court, arguing that Defendants had not established the case comported with CAFA's amount-in-controversy requirement. ECF 13. Defendants opposed the Motion. ECF 14. Plaintiff did not file a Reply.

## II.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardians Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, removal of a state action to federal court is proper only if the district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Here, Defendants argue that the Court has jurisdiction under CAFA. ECF 1. "CAFA provides the federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000. To determine whether the matter in controversy exceeds that sum, the claims of the individual class members shall be aggregated." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (cleaned up) (citing 28 U.S.C. § 1332(d)(1)(D), (d)(2), (d)(5)(B), (d)(6)). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. 28 U.S.C. § 1332(d). Congress intended CAFA to be interpreted expansively. S. Rep. No. 109–14, at 42 (Feb. 28,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

2005)."[2]  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  It is undisputed that the parties are minimally diverse and that the class contains over 100 members.  *See* ECF 1, 13, 14.  Plaintiff's sole basis for remand is that Defendants have not adequately established that the amount in controversy exceeds $5 million.  *See generally* ECF 13.

### III.    DISCUSSION

In her Motion, Plaintiff argues that Defendants' estimated amount in controversy ($12 million) is unsupported by any evidence.  ECF 13 at 7.  Plaintiff further argues that although Defendants (as the employers) have access to the employment records that would contain the relevant facts, Defendants did not provide those documents to the Court or ground their calculations in those facts.  *Id.*  Plaintiff argues that "all of Defendants' amount in controversy calculations are entirely speculative, inflated, and self-serving."  *Id.* at 8.  Plaintiff concludes that Defendants have therefore "failed to meet their burden of showing that CAFA's jurisdictional threshold is satisfied" and therefore remand is required.  *Id.*

"In determining the amount in controversy, courts first look to the complaint.   Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'"  *Ibarra*, 775 F.3d at 1197 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  In CAFA cases, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged."  *Id.* (citing *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).  In support of their amount in controversy calculations, the "parties *may* submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Id.* (emphasis added) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997)).   "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id.*

In her First Amended Complaint ("FAC"), Plaintiff does not allege any specific, numeric amounts in expected costs or damages that could be totaled to calculate the approximate amount

---

[2] The section of the Senate Judiciary Committee Report on CAFA that the Ninth Circuit cites to in *Ibarra* provides that "[i]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case."   S. Rep. No. 109–14, at 42 (Feb. 28, 2005)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

in controversy. *See generally* ECF 1-4. Plaintiff instead requests general relief under the applicable statutes. *Id.* For example, throughout the FAC, Plaintiff requests things like "restitution of unpaid wages," "reasonable attorneys' fees and costs of suit," and "other and further relief as the Court may deem just and proper," but at no point does Plaintiff attach any estimated dollar amounts to these requests. *Id.* The same is true of Plaintiff's Motion to Remand. Although Plaintiff spends considerable amounts of time critiquing Defendants' calculations, at no point does Plaintiff offer a specific, more reasonable alternative. *See generally* ECF 13. Therefore, while this Court will look to the FAC to ensure that Defendants' calculations align with the claims and facts presented therein, the FAC itself is of limited use in estimating the amount in controversy at issue in this case.

Because Defendants' bear the burden of establishing "by a preponderance of the evidence" that the amount in controversy exceeds $5 million, the Court will evaluate Defendants' calculations as to each of Plaintiff's claims to determine whether those calculations are sufficiently reasonable under Ninth Circuit law.[3] *Ibarra*, 775 F.3d at 1197; 28 U.S.C. § 1446(c)(2)(B).

### A.    Alleged Meal Break Violations (Second Claim)

To determine the amount in controversy for Plaintiff's meal break violations claim (under Cal. Lab. Code §226.7), Defendants begin by examining the FAC's allegations. ECF 1 at 13–14. Defendants then assess their business records to see which class members would be eligible for the breaks during the relevant time period.[4] *Id.* at 14. Based on the records, Defendants estimate there would be 258,273 shifts covered by the code section (e.g., shifts lasting more than five hours), and that the average pay for the workers performing those shifts would be $21.29 per hour. *Id.* Finally, Defendants estimate how often the violations occurred. Relying on the FAC's language that the class members were "regularly" and "routinely" deprived of meal breaks, Defendants assume a 40% violation rate. *Id.* Defendants then perform the calculation as follows: (258,273 shifts * 0.40 rate of violations) * $21.29/hr. = $2,199,448.60 in controversy.

The Court finds this calculation to be reasonably supported. After assessing the language of the FAC, the Defendants consulted their records to reach the numbers of 258,273 shifts and $21.29 average wage. The Court cannot presume that these figures were fabricated or given in bad faith. The weakest part of Defendants' calculation is undoubtedly the assumption of a 40% violation rate. However, it is logical that Defendants could not turn to any records to obtain this

---

[3] The Court evaluates each of the claims in the order they are presented in the Notice of Removal.

[4] *See* note 1, *supra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

figure; if Defendants were meticulously recording and reimbursing workers for any missed meal breaks, there would be no basis for the claim.   For the sake of argument, the Court applies a 20% violation rate—reducing the amount at issue to $1,099,726.43.   Even with this type of drastic reduction, as explained below, the *total* amount in controversy is still likely to exceed $5 million. Moreover, as Defendants point out, estimates that err on the larger side are permissible in the CAFA context (as long as they do not exceed the bounds of reasonableness), because "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).   Accordingly, the Court accepts the Defendants' approximated amount in controversy for Plaintiff's second claim.

### B.    Alleged Rest Break Violations (Third Claim)

Defendants calculate the amount in controversy for Plaintiff's rest break claim in much the same way.   After examining the language of the FAC and the statute (Cal. Lab. Code § 226.7 applies again here), Defendants review their records to determine how many workers' shifts are implicated (here, 268,138 shifts)[5] and what the average pay is for the workers on those shifts (again, $21.29 per hour).   ECF 1 at 15–16.   Defendants again assume the 40% rate of violation and perform the following equation: (268,138 shifts *0.40 rate of violations) * $21.29 = $2,283,458.90.   *Id.*   The Court again notes that even in a significant reduction in this figure (e.g., reducing the violation rate from 40% to 20%) is unlikely to bring the total amount in controversy below $5 million.   The Court finds this method of calculating amount in controversy for the rest break violations claim to be reasonable according to the same logic discussed above in section III(A).   Accordingly, the Court accepts the Defendants' approximated amount in controversy for Plaintiff's third claim.

### C.    Alleged Withholding of Minimum Wages (Fourth Claim)

To determine the amount in controversy for the minimum wage claim, Defendants begin by examining the allegations in the FAC.   *Id.* at 16.   Defendants next consult their records and estimate there are approximately 268,138 shifts at issue, that the minimum wage at that time was $13.00 per hour, and that "Plaintiff is seeking at least 5 minutes off-the-clock work for each shift, which equates to approximately 22,345 hours of off-the clock work."  *Id.* at 16–17.   Based on these assumptions, Defendants perform the following equation: 22,345 hours * $13 = $290,485. *Id.*   Because Plaintiffs are also seeking liquidated damages, Defendants double that amount, resulting in a $580,970 amount in controversy for this claim.   *Id.*

---

[5] In the context of Cal. Lab. Code § 226.7, eligible shifts are shifts lasting more than 3.5 hours.   ECF 1 at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

The Court finds the estimate to be reasonable. Again, the least concrete variable in this calculation is the estimate of violations committed—here, five minutes of off-the-clock time per shift. Five minutes per shift does not strike the Court as a wildly exaggerated or unreasonable estimation for off-the-clock work. Accordingly, because this estimate appears reasonable and the remaining variables are grounded in Defendants' employment records, the Court finds that Defendants have approximated a reasonable amount in controversy for Plaintiff's fourth claim.

### D.    Alleged Waiting Time Penalties Violations (Fifth Claim)

To calculate the amount in controversy for Plaintiff's waiting time penalties claim, Defendants once again begin with the language of the FAC and then apply the statute. ECF 1 at 17. Here, the relevant section of the California Labor Code imposes a three-year statute of limitations. Cal. Lab. Code § 203. Plaintiff filed her original complaint on October 7, 2024, therefore, the time period for the violations spans from October 7, 2021, through October 7, 2024. ECF 1 at 17. Defendants next consult their records and determine that approximately 417 eligible employees left their employment during that period, and that the average wage for those employees was $19.29 per hour. *Id.* at 17–18. Using these figures, Defendants perform the following calculation: 417 formerly employed employees * $19.29 per hour * 8 hours per day * 30 days = $1,930,543.20. *Id.* at 18.

Plaintiff argues that it is unlikely that *all* the formerly employed workers received late pay and therefore triggered the penalties. *See* ECF 13 at 21–22. However, as Defendants explain, in the context of section 203, a single violation is enough to trigger the penalties, making a 100% violation rate plausible. *See* ECF 14 at 22 (citing *Chan v. Panera*, No. 2:23-cv-04194-JLS, 2023 WL 6367677, at *3 (C.D. Cal. Sept. 28, 2023) ("[B]ecause of the way California's waiting time penalties operate, a single violation, if unaddressed would trigger penalties upon the employee's termination.")). Accordingly, the Court finds Defendants have calculated a reasonable amount in controversy with respect to Plaintiff's fifth claim.

### E.    Alleged Untimely Payment of Wages (Sixth Claim)

To calculate the amount in controversy for Plaintiff's claim for untimely payment of wages, Defendants again examine the FAC's allegations in the context of the relevant section of the California Labor Code. ECF 1 at 18. As was the case for Plaintiff's fifth claim, here, Defendants find the relevant code section (Cal. Lab. Code § 204) supports a 100% violation rate. ECF 14 at 21. The statute of limitations on section 204 implicates a time period from October 7, 2023, to December 10, 2024. *Id.* at 22. Upon review of their records, Defendants determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

there are 13,739 pay periods at issue for this claim.  *Id.*  Defendants then calculate as follows: 13,739 pay periods * $100 for initial statutory violation = at least $1,373,900 in controversy.

For the reasons discussed in above in section III(D), the Court finds Defendants' estimation of a 100% violation rate to be reasonable in this context.  Additionally, the Court finds that Defendants' willingness to assume a lower penalty amount (by assuming only the $100 per initial violation, instead of also accruing the $200 penalty plus 25% of the wages withheld, as section 203 imposes on willful violations) shows Defendants' willingness to use restraint in these calculations, rather than to always assume the highest possible calculator.  *See id.* at note 8.

### F.    Alleged Wage Statement Violations (Seventh Claim)

To calculate the amount in controversy as to the wage statement violations claim, Defendants start with the language in the FAC and then apply the relevant statutes.  *Id.* at 19. Here, California Labor Code § 226(e) imposes a $50 penalty for each initial alleged violation and a $100 penalty for subsequent violations, up to a maximum of $4,000 plus costs and attorney's fees.  *Id.* (citing Cal. Lab. Code § 226(e)).  This claim is subject to a one-year statute of limitations.  *Id.* (citing Cal. Code Civ. Proc. § 340(a); *Martinez v. Morgan Stanley & Co. Inc.*, Civil No. 09-cv-2937-L(JMA), 2010 WL 3123175, at * 6 (S.D. Cal. Aug. 9, 2010).  Upon review of their records, Defendants determine that during the relevant time period, there were approximately 579 workers estimated to have worked approximately 13,739 pay periods.  ECF 1 at 19.  Defendants therefore perform the following calculation: (579 initial pay periods * $50) + (13,160 subsequent pay periods * $100 for subsequent violation) = $1,344,950 in controversy. *Id.* at 20.  The Court finds these estimations to be reasonable based on the allegations in the FAC, Defendants' records, and the applicable law.

### G.    Estimated Attorneys' Fees

Defendants estimate the attorneys' fees Plaintiff could recover as approximately 25% of the total relief awarded.  ECF 14 at 26.  Plaintiff does not meaningfully dispute the figure of 25% as an estimate for attorneys' fees.  Rather, Plaintiff contends that the percentage amount is artificially high because Plaintiff expects the total amount in controversy to be substantially lower than Defendants' estimate.  ECF 13 at 22–23.  However, the Court has already determined that the estimated amounts in controversy for each claim appear reasonable.  Accordingly, the Court finds that Defendants' estimated attorneys' fees calculation is also reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

### H.     The Amount in Controversy Exceeds $5 Million

Defendants have sufficiently established that the amount in controversy exceeds $5 million.   In their Notice of Removal and in their Opposition to Plaintiff's Motion to Remand, Defendants provide a chart displaying how the amount in controversy for seven of Plaintiff's nine claims is sufficient to meet the jurisdictional requirement.   ECF 1 at 20–21, ECF 14 at 14.   The Court reproduces that chart below.

| Claim | Amount in Controversy |
|---|---|
| Minimum Wages | $580,970.00 |
| Meal Period Premiums | $2,199,448.61 |
| Rest Period Premiums | $2,283,458.95 |
| Waiting Time Penalties | $1,930,543.20 |
| Untimely Wage Payments | $1,373,900.00 |
| Wage Statement Penalties | $1,344,950.00 |
| Attorneys' Fees | $2,428,317.69 |
| **Total** | **$12,141,588.45** |

For the reasons discussed throughout this Order, the Court finds these estimates to be satisfactory.   Additionally, the Court points out that even if the meal period premiums and rest period premiums were reduced by half (assuming a violation rate of 20%, rather than 40% as discussed briefly in sections III(A) and (B)) and the amount owed in attorneys' was subsequently reduced to reflect these new estimations, the amount in controversy would still easily clear the jurisdictional bar.[6]   The Court recreates Defendants' chart to account for these proposed changes (changes to the original chart are highlighted in light gray):

---

[6] While Plaintiff may not be satisfied with these proposed alternatives, the Court reiterates that Plaintiff did not provide any alternative figures for consideration.   Indeed, Plaintiff failed to file a Reply brief and therefore did not respond to Defendants' arguments in their Opposition, effectively conceding these arguments.   *See In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1154 (N.D. Cal. 2023) ("The Court takes plaintiff's failure to file a reply addressing this opposition as a concession to defendants' arguments."); *Aramak Facility Servs. V. Serv. Emp. Int'l Union, Loc. 1877*, 530 F.3d 817, 824 n.2 (9th Cir. 2008) (failing to adequately brief arguments waives them).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:24-cv-02663-MRA-SHK | Date | May 20, 2025 |
|---|---|---|---|
| Title | Mireya Martinez v. Cencora, Inc. et al. | | |

| Claim | Amount in Controversy |
|---|---|
| Minimum Wages | $580,970.00 |
| Meal Period Premiums | $1,099,724.30 |
| Rest Period Premiums | $1,141,729.48 |
| Waiting Time Penalties | $1,930,543.20 |
| Untimely Wage Payments | $1,373,900.00 |
| Wage Statement Penalties | $1,344,950.00 |
| Attorneys' Fees | ($7,471,816.98 *0.25) = $1,867,954.24 |
| **Total** | **$9,339,771.22** |

Moreover, Defendants have cleared this hurdle while addressing the amount in controversy as to only seven of the nine claims Plaintiff brings in her FAC, which leaves some cushion as to Defendants' calculations: even if some of the estimates are slightly high, the overall estimate is still likely to be reasonable and still likely to exceed $5 million.

## IV.   CONCLUSION

Defendants have applied a methodical and reasonable approach to calculating an estimated amount in controversy for the purposes of establishing federal jurisdiction.  For the foregoing reasons, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

Initials of Deputy Clerk        gga